Our next case is In Re. R.S. Lipman Brewing Company, LLC Thank you. May it please the court. William LaMarca for the PTO. First of all, let me clarify something that appellant said. They said that Coors didn't apply Coors. I mean, that the board did not apply the Coors decision. That's totally false. If you look at the board decision, you'll see they spent about 10 pages specifically analyzing the Coors decision, the standards set out in Coors, and why this case is factually different than Coors. That's what the board's decision is all about, Your Honor. And let me explain those differences. Yes, here in Coors you did not have identical marks. You had similar marks. You had Blue Moon Beer and Blue Moon Cafe. They were not identical. They were stylized with color and drawings and pictures and moons and all types of things. And the Coors court specifically pointed out that the differences in the marks had an impact on their analysis. Here, the marks are identical. They're word marks. They're not stylized marks. They're just word textual marks, and they're identical in every way. As a result, this court is pretty well established that when you do have identical marks, that's a much stronger impact on the likelihood of confusion analysis. So that, number one, that's the number one difference. That affects the entire analysis, correct? Correct, Your Honor, because if you read the DuPont factors in the DuPont case, they go through all the factors and they say, when you're using these factors to come with the overall determination, that is a key factor when the marks are identical. So right off the bat, we've got something that's much stronger than what we had in Coors. Number two, we talk about the strength of the cited mark. The cited mark here, I think it's the 467 registration that's cited, which is the identical Chickaswick mark. It's not weak. There's no evidence of weakness. In Coors, the cited registration, the Coors court pointed out there were over 100 restaurants using the words Blue Moon in one way or another, and that had an impact on the weakness of the cited registration. Here, we've got a strong cited registration with no evidence of weakness, and in Coors we had that. So there's two factors that make this case stronger than the Coors case factually. Third, the evidence of relatedness here. Appellant says, oh, we really have the same factual record, it's all the same. It's not the same. We've pointed out in our brief, and we've given you specific sites throughout the brief in the joint appendix of, yes, we've got over 20, I think over 20 third party registrations showing both beer and restaurant services from the same source. That's an indication that a singular source can produce both beer and restaurant services. Number two, we've got evidence of industry use. Back in 20 years ago when Coors was decided, the Internet wasn't as prevalent. And at the PTO, it's an ex parte proceeding. They have to use the Internet to do their searching. The evidence here is much clearer. We've got page after page after page of all these brew pubs, restaurants, tap rooms, distilleries, all these places that serve food in a restaurant as well as serve beer, oftentimes under the same mark. Oftentimes you'll go to Dogfish Brewery, for example, which is a restaurant. You'll sit down and you'll order a Dogfish beer. And you can also buy the bottled Dogfish beer that has the same exact trademark on it. And if you were to sell another beer out in the marketplace named Dogfish, there would be a likelihood of confusion because consumers have grown to be accustomed to understanding that beer under a particular name can often come from the same name as a restaurant. So that's what this evidence really shows. And I've got citation after citation in this record, Your Honor, so. You don't have to get. Yeah, I don't want to go through it all, but to characterize it as exactly the same as Coors is simply not accurate. It really isn't the same. In every context, every step of the way, this case is stronger on behalf of a likelihood of confusion than the Coors case was. One, identical marks. Two, a stronger cited registration. Three, better quality evidence of relatedness, which qualifies and satisfies the, quote, something more standard, which is what Appellant was talking about. And to the extent that the Board never applied the something more standard, if you look at pages 15 through, I think it starts on 15, 15, 16, 17, 18, 19, 20, 21, all the way up to page 23 of the Board decision. And then the Board finally says, under that second DuPont factor, which is the relatedness of the goods and services, we find sufficient evidence to show the relatedness of the applicant's goods to the registered services. And the something more standard has been satisfied. So they actually applied the Coors legal standard, and they applied it to the facts in this case to arrive at that conclusion. And yes, it is an ultimate legal conclusion, but it's based on underlying fact findings. And those underlying fact findings are support, they follow the substantial evidence standard, as you pointed out, Your Honor. So we believe we've got substantial evidence to support the fact findings by the Board that led to its correct conclusion that there's a likelihood of confusion in this case. That's our position. And if there's anything else, I'll sit down. Thank you very much. Thank you very much. The Coors decision finds that when you're talking about general industry overlap evidence, which is all we have here, we don't have any evidence that there's overlap between the applicant and the registrant in this case. None. No evidence of that. What the Coors court found expressly was that there is not enough evidence in Coors to show that consumers will think that a same or similar mark for beer is confusingly similar to a same or similar mark for restaurant services. Jacobs is retail food versus restaurant services. This is precedent of 40 years. If you read the Board's decision in this case at pages 22 to 24, they expressly disagree with Coors. They've effectively overruled Coors. When they say that they, I mean, they're effectively overruling Coors. Coors says that general industry overlap evidence has to be substantial. That's what it says. In this case, there is no evidence that's, I mean, they're arguing it's different, but it's shades of gray. It's general industry overlap evidence. What do Coors and Jacobs both say? The express holdings of Jacobs and Coors, you have to show something more for identical marks. Even if the marks are identical and we disagree on the meeting, we've already explained I'm not going to go over that again. For identical marks, the express holding of Jacobs and Coors is you have to show something more. In this case, and I would ask the court to go look at St. Helena Hospital. St. Helena Hospital says that something more has to be evidence that relates to the applicant and the registrant, not general industry trends. The only evidence of record here is general industry trends. It's basically Coors. So DuPont Factor 2 is the relatedness of the goods. Has the board established as a matter of law, they agree that it's a legal conclusion for this court, or a matter of substantial evidence, have they established that DuPont Factor 2 supports them? Under Coors, the answer is no. This court would have to find that the evidence in this case is different than Coors in order to find that this decision should be affirmed. In Coors, this court reversed and remanded. In Jacobs, it was an affirmance that there was not something more. Policy implications. The policy implications in this case. What did the court find in Coors? That there's not enough trademarks for all the people applying for beer or retail food Jacobs and restaurant services. If this court affirms this decision, it means moving forward that beer and restaurant services are related as a matter of law. All that has to happen, what do they cite in this case? 21 registrations, 18 websites out of a million restaurants. There's over a million restaurants per In Re Iron Hill. Over a million restaurants. They've got 18 websites. And now moving forward, the law is going to be that beer and restaurant services are related based on a mere Internet search. 18 websites. So you've got 21 registrations, 18 websites, 9 articles. And as we've discussed, I mean, if you go even look at the evidence, I mean, it would not pass Daubert and it would not pass a cross-examination. It doesn't reflect what they say. So I have nothing more. I appreciate your time. I do think this is a significant decision. I don't think it's limited to the facts of this case. And I do think it overrules course. Thank you. Thank you.